**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR M. FLYNN (SBN 253362)
*tflynn@fmfpc.com*
KADEN BYRON (SBN 333158)
*kbyron@fmfpc.com*
ALLISON FERRARO (SBN 351455)
*aferraro@fmfpc.com*
DANIEL SACHS (SBN 361027)
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiff***

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| FRANKIE WALTON, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC.,<br><br>Defendant. | Case No:<br><br>**<u>CLASS ACTION COMPLAINT SEEKING STATEWIDE RELIEF</u>**<br><br>**COMPLAINT FOR CONSUMER FRAUD, BREACHES OF WARRANTY, NEGLIGENT MISREPRESENTATION, AND UNJUST ENRICHMENT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff FRANKIE WALTON, individually, and on behalf of all others similarly situated, brings this action against Defendant CVS PHARMACY, INC. ("CVS") and alleges the following upon her own knowledge, or where she lacks personal knowledge, upon information and belief, including the investigation of her counsel.

## NATURE OF THE ACTION

1. Reasonable consumers seek out hypoallergenic products to avoid unnecessary ingredients that risk allergic reaction. CVS sells store-branded Toddler Cleansing Wipes that it prominently advertises as "Hypoallergenic."




2. This claim is misleading, however, because the Wipes contain added fragrance—a cosmetic allergen that serves no cleansing, preservative, or stabilizing function.

3. Plaintiff brings this action against CVS on behalf of herself, similarly situated Class Members, and the general public to enjoin CVS from deceptively marketing the Wipes in this manner, and to recover compensation for injured Class Members.

**JURISDICTION & VENUE**

4. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, the proposed Class consists of more than 100 members, and at least one member of the proposed Class is a citizen of a State different from Defendant.

5. The Court has personal jurisdiction over Defendant because it has purposely availed itself of the benefits and privileges of conducting business activities within California, including by distributing and selling the Products in California.

6. Venue is proper in this Central District of California pursuant to 28 U.S.C. § 1391(b) and (c), because Defendant resides (*i.e.*, is subject to personal jurisdiction) in this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**PARTIES**

7. Plaintiff Frankie Walton is a citizen and resident of Orange County, California.

8. Defendant CVS is a Rhode Island corporation with its principal place of business in Woonsocket, Rhode Island.

**FACTS**

**I. THERE IS SUBSTANTIAL AND GROWING CONSUMER DEMAND FOR HYPOALLERGENIC PRODUCTS**

9. Consumer demand for hypoallergenic skincare and hygiene products has grown drastically in recent years. The global sensitive skin care products market size was estimated at USD 44.60 billion in 2023 and is projected to reach USD 80.97 billion by 2030, growing at a CAGR of 8.9% from 2024 to 2030.[1]

[1] *Sensitive Skin Care Products Market Size, Share & Trends Analysis Report By Product (Face Care, Body Care, Lip Care), By Gender (Male, Female), By Distribution Channel, By Region, and Segment Forecasts, 2024–2030*, Grand View Rsch., *available at*

10. Skin allergies are common and increasingly prevalent in the United States, particularly among young children. According to the Centers for Disease Control and Prevention, approximately 12% of U.S. children—and more than 14% of children ages 0 to 4—reported skin allergies. Other studies suggest the true prevalence of allergic contact dermatitis may be substantially higher.

11. Allergic contact dermatitis is among the most common skin diseases in the United States. Personal care products, including soaps, lotions, and other skincare products, frequently contain ingredients capable of triggering allergic reactions. Reports indicate that dermatitis associated with personal care products has increased dramatically over the past several decades.

12. In response to growing consumer demand for products perceived as safer for sensitive skin, retailers have increasingly marketed personal care products with "hypoallergenic" labeling claims. Although these claims convey that products are formulated to minimize the risk of allergic reactions, the FDA has not defined or specifically regulated those terms, allowing manufacturers and retailers substantial discretion in their use.

13. Reasonable consumers—particularly those with sensitive skin or purchasing products for children—seek out products labeled "hypoallergenic" because they understand that representation to mean the product has been formulated to minimize unnecessary allergenic ingredients so as to reduce the risk of allergic reactions.

14. This demand results in increased consumer willingness to pay more for "hypoallergenic" products.

## II. CONSUMER UNDERSTANDING OF HYPOALLERGENIC

15. Consumers purchasing products represented as "hypoallergenic" reasonably expect that such products will have little likelihood of causing an allergic reaction. Indeed, Merriam-Webster defines "hypoallergenic" as "having little likelihood of causing an allergic

---

https://www.grandviewresearch.com/industry-analysis/sensitive-skin-care-products-market-report.

reaction," while Dictionary.com defines the term as "designed to reduce or minimize the possibility of an allergic response . . . ."

16. Hypo, as a prefix, means "less than." Reasonable consumers understand the representation "Hypoallergenic" to mean that a product is formulated to minimize the risk of allergic reactions and, accordingly, does not contain ingredients that would cause the product to be classified as a skin sensitizer.

17. A skin sensitizer is a chemical capable of inducing an allergic response following skin contact. A mixture containing a skin sensitizer at or above the applicable regulatory threshold—or at lower concentrations capable of triggering reactions in already-sensitized individuals—is itself classified as a skin sensitizer.

18. Once sensitized, even minute amounts of an allergen may provoke an allergic reaction. Accordingly, a product that, because of its ingredients, would be classified as a skin sensitizer, is inconsistent with consumer expectations regarding a representation that the product is hypoallergenic.

## III. CVS'S HYPOALLERGENIC CLAIM IS FALSE AND MISLEADING

19. As a sophisticated marketing company that studies consumer demand, CVS is aware of the strong consumer preference for avoiding potential allergens and capitalizes on it by marketing and labeling its Toddler Cleansing Wipes as "Hypoallergenic."

20. CVS's representation that the Wipes are "Hypoallergenic" is misleading, however, because they contain added fragrance—which is only apparent upon a careful examination of the Wipes' fine-print ingredient list on the back of the package, pictured (and then blown up) below.

[continued]







21. Added fragrance is one of the most common causes of allergic contact dermatitis and skin irritation. According to the American Academy of Dermatology, approximately 2.5 million Americans have fragrance allergies.

22. Fragrance ingredients are widely recognized skin sensitizers capable of inducing allergic reactions following skin contact.

23. The risk posed by fragrance is particularly acute for individuals with sensitive skin or compromised skin barriers, including those with eczema, rosacea, or psoriasis. Repeated exposure may induce sensitization over time, such that even consumers who initially tolerate fragranced products may later develop allergic reactions.

24. Indeed, the detrimental effects of added fragrance on sensitive skin are well documented in the scientific literature.

25. One peer-reviewed review, for example, explains that fragrance ingredients can "cause detrimental health . . . effects including contact dermatitis (irritant and/or allergic),

non-eczematous contact reactions, photosensitivity, photo-allergy, and immediate contact reactions, which can negatively impact the quality of life."[2]

26. A clinical review concluded "Allergic contact dermatitis to fragrance is common, and positive reaction rates range from 5% to 11% in patch-test populations."[3]

27. Another article explains that consumer products frequently contain "covert" fragrances and emphasizes that "[p]atients and physicians alike should be aware that fragrances are a common cause of allergic contact dermatitis (ACD) and that patient education is critical to treatment success."[4]

28. The need for such education underscores that reasonable consumers cannot be expected to identify or appreciate the presence and significance of fragrance allergens in everyday personal care products, particularly where those products are marketed as suitable for sensitive skin.

29. Fragrance serves no therapeutic or skin-protective function in skincare products. Rather, it is added solely to impart or mask scent and does not contribute to cleansing or skincare efficacy. Thus, the Wipes would perform their intended cleansing function without added fragrance.

30. Because fragrance is a well-recognized and unnecessary skin sensitizer, reasonable consumers seeking products labeled "Hypoallergenic" expect manufacturers to omit added fragrance where it serves no functional skincare purpose.

31. Despite representing that the Wipes are "Hypoallergenic," CVS formulated them with added fragrance at a concentration sufficient to cause the Wipes themselves to be classified as a skin sensitizer.

---

[2] Pastor-Nieto MA, et al., "Ubiquity, Hazardous Effects, and Risk Assessment of Fragrances in Consumer Products," 8 Curr Treat Options Allergy No. 1, pp. 21-41 (2021).

[3] Reeder, MJ, "Allergic Contact Dermatitis to Fragrances," 38 Dermatologic Clinics 371 (2020).

[4] Rodriguez I, et al., "A Whiff of Trouble: Navigating Allergic Contact Dermatitis to Fragrance," 114 Cutis. No. 2, pp. 41-45 (Aug. 2024).

**PLAINTIFF'S PURCHASE, RELIANCE, AND INJURY**

32. Starting in approximately 2025 and continuing until approximately June 2026, Plaintiff Frankie Walton regularly purchased the CVS Toddler Cleansing Wipes from CVS stores in Orange County, California.

33. When purchasing the Wipes, Plaintiff was searching for hypoallergenic skin wipes, meaning wipes that would minimize the likelihood of causing an allergic reaction, and not made with any unnecessary skin sensitizers.

34. In purchasing the Wipes, Plaintiff was exposed to, read, and relied on label's "Hypoallergenic" claim, which Plaintiff reasonably understood to mean formulated without added fragrance or other unnecessary, well-recognized cosmetic allergens, and therefore suitable for people with allergies and sensitive skin.

35. Because the Wipes contain fragrance, however, they are not hypoallergenic, and instead have a tendency to increase the risk of skin irritation and allergic contact dermatitis.

36. Plaintiff acted reasonably in relying on CVS's "Hypoallergenic" representation, which CVS intentionally placed on the Wipes' labeling with the intent to induce average consumers into purchasing them.

37. The Wipes cost more than similar products without misleading labeling and would have cost less absent CVS's false and misleading statements.

38. Through the misleading labeling claims, CVS was able to gain a greater share of the wipes market than it would have otherwise and to increase the size of the market.

39. Instead of receiving Wipes that were hypoallergenic—and therefore suitable for people with allergies and sensitive skin—Plaintiff received Wipes that contained added fragrance, and were therefore not hypoallergenic.

40. Plaintiff paid more for the Wipes, and would only have been willing to pay less, or unwilling to purchase them at all, absent the false and misleading labeling complained of herein.

41. For these reasons, the Wipes were worth less than what Plaintiff and other Class Members paid for them.

42. Plaintiff and the Class lost money as a result of CVS's deceptive claims and practices in that they did not receive what they paid for when purchasing the Wipes.

43. Plaintiff has sensitive skin and wishes to continue purchasing hypoallergenic skincare products. Plaintiff would purchase CVS toddler wipes again if she could rely on CVS's "Hypoallergenic" representation. However, absent injunctive relief, Plaintiff may not be able to determine whether CVS's future use of the "Hypoallergenic" representation is truthful.

## CLASS ACTION ALLEGATIONS

44. While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a class of all persons in California who, at any time from four years prior to the date of filing of this Complaint to the time a class is notified (the "Class Period"), purchased, for personal or household use, and not for resale or distribution CVS Toddler Cleansing Wipes (the "Class").

45. The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

46. Questions of law and fact common to Plaintiff and the Class include:

a. Whether CVS represents that its Toddler Cleansing Wipes are "Hypoallergenic";

b. Whether "Hypoallergenic" is material to reasonable consumers;

c. Whether the "Hypoallergenic" representation communicates to reasonable consumers that the Wipes do not contain well-recognized cosmetic allergens, including added fragrance;

d. Whether the Wipes contain fragrance;

e. Whether labeling the Wipes as "Hypoallergenic" is false, misleading, or reasonably likely to deceive a reasonable consumer;

f. Whether CVS's conduct violates any state or federal statute and is therefore unlawful;

g. Whether CVS intentionally or negligently misrepresented the Wipes; and

h. Whether Plaintiff and the Class are entitled to restitution, disgorgement and/or other equitable and injunctive relief, and the proper scope of relief.

47. These common questions of law and fact predominate over questions that affect only individual Class Members.

48. Plaintiff's claims are typical of other Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to CVS's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Wipes and suffered economic injury because the products are misrepresented. Absent CVS's business practice of deceptively and unlawfully labeling the Wipes, Plaintiff and other Class Members would not have purchased them or would have paid less for them.

49. Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of foods and beverages.

50. Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

51. CVS has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

52. As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

53. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

54. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

55. The acts, misrepresentations, practices, and non-disclosures alleged herein constitute business acts and practices.

### Fraudulent

56. A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

57. As set forth herein, CVS's labeling and marketing of its Toddler Cleansing Wipes as "Hypoallergenic" is likely to deceive reasonable consumers and the public.

### Unlawful

58. The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL");
- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA");
- The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq*. (the "FDCA"); and
- The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq*. (the "Sherman Law"). The FDCA prohibits the introduction into interstate commerce of cosmetics whose labeling is false or misleading. *See* 21 U.S.C. §§ 331(a), 362(a). California has adopted these identical requirements through the Sherman Law.

**Unfair**

59. CVS's conduct with respect to the labeling, advertising, and sale of the Wipes was unfair because CVS's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

60. CVS's conduct with respect to the labeling, advertising, and sale of the Wipes was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the FAL, CLRA, portions of the FDCA, and portions of California's Sherman Law.

61. CVS's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided. Specifically, the increase in profits obtained by CVS through the misleading labeling does not outweigh the harm to Class Members who were deceived into purchasing the Wipes believing they were hypoallergenic and thus suitable for people with allergies and sensitive skin, when in fact they contain fragrance and increase the risk of allergic reactions in susceptible consumers.

62. CVS profited from the sale of the falsely, deceptively, and unlawfully advertised Wipes to unwary consumers.

63. Plaintiff and Class Members are likely to continue to be damaged by CVS's deceptive trade practices, because CVS continues to disseminate misleading information and command a price premium in the marketplace as a result of its deceptive practices. Thus, injunctive relief enjoining CVS's deceptive practices is proper.

64. CVS's conduct caused and continues to cause substantial injury to Plaintiff and other Class Members. Plaintiff has suffered injury in fact as a result of CVS's unlawful conduct.

65. In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining CVS from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

66. Plaintiff and the Class also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

**SECOND CAUSE OF ACTION**

**Violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq*.**

67. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

68. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

69. As alleged herein, the advertisements, labeling, policies, acts, and practices of CVS relating to its Toddler Cleansing Wipes were likely to mislead consumers acting reasonably.

70. Plaintiff suffered injury in fact as a result of CVS's actions as set forth herein because she purchased the Wipes in reliance on CVS's false and misleading marketing claims stating or suggesting that the Wipes are hypoallergenic.

71. CVS's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because CVS has advertised the Wipes in a manner that is untrue and misleading, which CVS knew or reasonably should have known.

72. CVS profited from the sale of the falsely and deceptively advertised Wipes to unwary consumers.

73. As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which CVS was unjustly enriched.

74. Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the California Class, seeks an order enjoining CVS from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

**THIRD CAUSE OF ACTION**

**Violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.**

75. Plaintiff realleges and incorporates by reference the allegations set forth elsewhere in this Complaint as if fully set forth herein.

76. The CLRA prohibits unfair or deceptive acts or practices in a transaction intended to result, or that results, in the sale of goods to a consumer.

77. The CVS Toddler Cleansing Wipes are a "good," Plaintiff and the Class are "consumers," and their purchases are "transactions" within the meaning of the CLRA.

78. CVS's acts and practices, as alleged herein, violated and continue to violate at least the following provisions of Cal. Civ. Code § 1770(a):

- § 1770(a)(5): representing that goods have characteristics, uses, or benefits that they do not have;
- § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;
- § 1770(a)(9): advertising goods with intent not to sell them as advertised; and
- § 1770(a)(16): representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

79. CVS's false and misleading labeling was designed to, and did, induce Plaintiff and other Class Members to purchase the Wipes for personal, family, or household use.

80. For CVS's violations of the CLRA, Plaintiff presently seeks restitution and prospective injunctive relief, along with attorneys' fees and costs.

81. Pursuant to California Civil Code § 1782, Plaintiff notified CVS in writing of the particular violations of the CLRA and demanded it correct the actions described herein.

If CVS does not implement remedial measures within 30 days of notice, Plaintiff intends to amend her Complaint to seek actual and punitive damages.

82. In compliance with Cal. Civ. Code § 1780(d), an affidavit of venue is filed concurrently herewith.

**FOURTH CAUSE OF ACTION**

**Breaches of Express Warranties, Cal. Com. Code § 2313(1)**

83. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

84. Through the CVS Toddler Cleansing Wipes' labeling, CVS made affirmations of fact or promises, or descriptions of goods, that the products are "Hypoallergenic."

85. This representation was part of the basis of the bargain in that Plaintiff and the Class purchased the Wipes in reasonable reliance on that statement. Cal. Com. Code § 2313(1).

86. CVS breached its express warranties by selling Wipes that, for the reasons described herein, do not meet the above affirmations, promises, and product descriptions.

87. That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Class Members paid for the Wipes .

88. As a result, Plaintiff seeks on behalf of herself and other Class Members, actual damages arising as a result of CVS's breaches of express warranties, including, without limitation, expectation damages.

**FIFTH CAUSE OF ACTION**

**Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314**

89. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

90. CVS, through its acts set forth herein, in the sale, marketing, and promotion of its Toddler Cleansing Wipes, made representations that the Wipes are "Hypoallergenic."

91. A "warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code §

2314(1). CVS is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there were, in the sale to Plaintiff and the Class, implied warranties that those goods were merchantable.

92. In order for goods to be "merchantable," they must "[c]onform to the promises or affirmations of fact made on the container or label." Cal. Com. Code § 2314(2)(f).

93. CVS breached that warranty of merchantability because, for the reasons discussed herein, the Wipes are not "Hypoallergenic" and thus they do not conform to the promises and/or affirmations of fact made on the labels.

94. As an actual and proximate result of CVS's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by CVS to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods.

95. As a result, Plaintiff seeks actual damages, including, without limitation, expectation damages.

**SIXTH CAUSE OF ACTION**

**Negligent Misrepresentation**

96. Plaintiff realleges and incorporates by reference the allegations set forth elsewhere in this Complaint as if fully set forth herein.

97. As alleged above, CVS represented, expressly and by implication, that its Toddler Cleansing Wipes were hypoallergenic. This representation was false for all the reasons set forth herein.

98. CVS made representations the Wipes are "Hypoallergenic" in the course of its business, including in the marketing, advertising, labeling, distribution, and sale of the Wipes, transactions in which both Plaintiff and CVS had a pecuniary interest.

99. CVS knew or, at a minimum, should have known that its "Hypoallergenic" representation was false or misleading because it formulates, manufactures, labels, markets, and sells the Wipes. CVS failed to exercise reasonable care in communicating these representations to consumers.

100. CVS possesses superior knowledge regarding the formulation, composition, ingredients, intended use, and material characteristics of its products. Such information is not readily available to ordinary consumers, including Plaintiff and Class Members.

101. CVS had a duty to exercise reasonable care in supplying accurate information to consumers concerning the characteristics, qualities, and intended use of the Wipes because it knew consumers would rely on that information in deciding whether to purchase the products.

102. Plaintiff and other Class Members reasonably relied on CVS's representations in deciding to purchase the Wipes. Had Plaintiff known that the Wipes contained added fragrance, she would not have purchased the Wipes, or only would have paid less.

103. CVS's misrepresentation was material because reasonable consumers attach importance to whether a product marketed as a "Hypoallergenic." Such representations are especially important to those with allergies and sensitive skin, who are the intended consumers of hypoallergenic products.

104. As a direct and proximate result of CVS's negligent misrepresentation, Plaintiff and Class Members suffered economic injury by paying a price premium for the Wipes that they otherwise would not have paid.

**SEVENTH CAUSE OF ACTION**

**Unjust Enrichment**

73. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

74. Plaintiff and other Class Members conferred upon CVS an economic benefit, in the form of profits resulting from the purchase and sale of the Wipes.

75. CVS's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff's and other Class Members' purchases of the Wipes, and the economic benefits conferred on CVS are a direct and proximate result of its unlawful and inequitable conduct.

76. It would be inequitable, unconscionable, and unjust for CVS to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

77. As a result, Plaintiff and other Class Members are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by CVS as a result of such business practices.

**PRAYER FOR RELIEF**

105. Wherefore, Plaintiff, on behalf of herself, all others similarly situated, and the general public, pray for judgment against CVS as to each and every cause of action, and the following remedies:

a. An Order declaring this action to be a proper class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's undersigned counsel as Class Counsel;

b. An Order requiring CVS to bear the cost of Class Notice;

c. An Order enjoining CVS's deceptive business practices;

d. An Order compelling CVS to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending products;

e. An Order requiring CVS to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

f. An Order requiring CVS to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

g. An Order requiring CVS to pay compensatory, statutory, and punitive damages as permitted by law, except for damages available under the CLRA unless later asserted;

h. An award of attorneys' fees and costs; and

i. Any other and further relief that Court deems necessary, just, or proper.

**JURY DEMAND**

94. Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 9, 2026

/s Trevor Flynn

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR M. FLYNN
*tflynn@fmfpc.com*
KADEN BYRON
*kbyron@fmfpc.com*
ALLISON FERRARO
*aferraro@fmfpc.com*
DANIEL SACHS
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiff***